J-S39011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| I-KEEM DAMONT FOGAN | : | |
| | : | |
| Appellant | : | No. 67 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 26, 2021
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001303-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.: **FILED: FEBRUARY 7, 2023**

I-Keem Fogan appeals from the judgment of sentence imposed by the Lycoming County Court of Common Pleas after a jury convicted him of several offenses, including first-degree murder, second-degree murder, attempted homicide and robbery. Fogan argues on appeal that the trial court erred by denying his request to instruct the jury on third-degree murder, and abused its discretion both by allowing a police officer to testify about a question Fogan posed to him after Fogan's preliminary arraignment as well as by denying Fogan's motion to waive prosecution costs. We do not find any merit to these claims, and we therefore affirm.

At trial, the Commonwealth presented evidence that Fogan and Noah Stroup robbed a Uni-Mart in August 2019. Surveillance cameras captured the robbery on video. Fogan entered the Uni-Mart with a firearm, and grabbed a

customer as she was leaving the store ("Customer"). Fogan dragged Customer up to the cash register. Fogan then pointed the firearm at the store cashier ("Cashier") and demanded money, but after Cashier pushed Fogan's hand away, Fogan shot Cashier in the chest. Fogan proceeded to shoot Customer in the chest, and fled the scene.

Cashier suffered serious injuries but survived. Customer, meanwhile, died at the scene of the robbery. Fogan was eventually arrested and charged with homicide, attempted homicide, robbery and several other offenses.

A jury trial was held on September 20-24, 2021 and September 27, 2021. At trial, the Commonwealth showed video footage from the two different surveillance systems used by the Uni-Mart that Fogan and Stroup robbed. The Commonwealth also called Stroup to the stand as a witness. Stroup testified he and Fogan robbed the Uni-Mart on August 4, 2019, with Stroup acting as "the look-out" outside and Fogan committing the robbery inside the store. N.T., 9/21/2021, at 63. Stroup testified Fogan entered the Uni-Mart with a handgun, grabbed Customer and held her at gunpoint, demanded money from Cashier, and ended up firing shots. *See id.* at 69. Fogan later told Stroup he had shot both Customer and Cashier. *See id.* at 71. Stroup also identified Fogan as the individual with the firearm inside the Uni-Mart on the Uni-Mart surveillance video footage. *See id.*

Fogan's defense at trial was that he was not the individual who robbed the store. Following the trial, the jury convicted Fogan of a variety of offenses,

including first-degree murder, second-degree murder, attempted homicide, robbery, aggravated assault, and a firearm offense. The court sentenced Fogan to a life sentence without parole on the first-degree murder count, a concurrent term of life imprisonment without parole on the second-degree murder count, and lesser concurrent terms of imprisonment on the lesser offenses. The court also imposed restitution and prosecution costs on Fogan.

Fogan filed post-sentence motions. The trial court denied those motions, but specifically granted leave for Fogan to file a motion for reconsideration of sentence *nunc pro tunc* to request waiver of the prosecution costs. Fogan filed the motion, arguing that the court should waive the prosecution costs because he was indigent and had been sentenced to life imprisonment. The trial court scheduled a hearing on the motion for December 3, 2021. The trial judge retired, however, and the matter was reassigned. The reassigned trial court heard arguments on the motion on December 3, 2021, as scheduled, but ultimately denied Fogan's motion to waive costs. It did so on the basis that under current precedent, the court was not required to hold an ability-to-pay hearing unless Fogan faced imprisonment for failure to pay the mandatory court costs. **See** Trial Court Order, 12/21/2021, at 1-2. Fogan filed a notice of appeal, and raises three issues for our consideration:

> I. Did the trial court err by refusing to instruct the jury on third-degree murder where [Fogan] was accused of killing a patron while robbing a convenience store?
>
> II. Did the trial court abuse its discretion by admitting testimony of a prosecuting officer that [Fogan] asked the

means of death in Pennsylvania after being preliminarily arraigned on an open count of homicide?

III. Did the [trial] court err by denying [Fogan's] motion to waive costs when he is indigent and has been sentenced to serve a life sentence?

Appellant's Brief at 4.

Fogan first complains the trial court erred by denying his request to instruct the jury on third-degree murder because, according to Fogan, the evidence at trial would have supported a third-degree murder conviction. He argues:

Even though [Fogan] denied committing the offenses, the Commonwealth's evidence at trial would support third-degree murder, not just first-degree murder. In addition, the jury could have found that the killing was separate from the robbery offense since the person killed was not the intended victim of the robbery. A jury could have found that, after shooting the clerk, the killing of the patron was a break in the chain of events between the robbery and shooting of the customer; in essence, they could find that it did not occur in the course of committing a theft nor in the flight therefrom.

Appellant's Brief at 15-16. This claim is without merit.

As Fogan acknowledges, a trial court may only instruct the jury on an offense where the evidence "would reasonably support such a verdict." **Id.** at 10 (*quoting* **Commonwealth v. Thomas**, 717 A.2d 468 (Pa. 1998)). In finding the evidence could not reasonably support a third-degree murder verdict here, the trial court first distinguished the three degrees of murder. The court noted first-degree murder involves an intentional killing, *i.e.* one done with the specific intent to kill. **See** 18 Pa. C.S.A. § 2502(a). Second-

- 4 -

degree murder, meanwhile, is a killing that is committed while the "defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). The trial court specifically pointed out that the Crimes Code defines "perpetration of a felony" as "[t]he act of a defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit [,*inter alia*], robbery." 18 Pa. C.S.A. § 2502(d). All other kinds of murder that are not first-degree or second-degree are murder in the third degree. **See** 18 Pa. C.S.A. § 2502(c).

The trial court then cogently explained why it had been proper for the court to refuse to instruct the jury on third-degree murder in this case. We reproduce the court's analysis and adopt it as our own:

> [Fogan] tried to argue that the killing of the customer was separate from the robbery of the cashier. This argument ignore[s] the definition of "perpetration of felony." Both shootings occurred either in the attempt to commit a robbery or as part of the shooter's flight after attempting to commit a robbery. Not only does the definition of second-degree murder include flight after committing or attempting to commit a robbery, but the definition of the phrase "in the course of committing a theft" in the robbery statute includes not only commission or attempt to commit theft but also flight after the attempt or commission. 18 Pa.C.S.A. § 3701(a)(2). Whether [Fogan] shot and killed the customer during the attempted robbery or in his efforts to flee from the Uni-Mart is of no moment as both would satisfy the definitions of "in the course of committing a theft" for a robbery and the "perpetration of a felony" for second-degree murder. Since the acts clearly constituted second-degree murder, by definition the crime could not be third-degree murder. Instructions that are not supported by the evidence are not required and serve no purpose other than to confuse the jury. [**See**] **Commonwealth v. Browdie**, [ ], 671

- 5 -

A.2d 668, 674 (Pa. 1996); **Commonwealth v. Patton**, 936 A.2d 1170, 1176 (Pa. Super. 2007).

Furthermore, the standard jury instruction for second-degree murder states that a defendant kills while fleeing if he does the act that kills during his flight from the scene and there is no break in the chain of the events between the felony and the killing. [**See**] Pa. SSSJI 15.2502B. The court gave this instruction to the jury. [**See**] N.T., 09/27/2021, at 117.

In this case, there was no break in the chain of events between the felony and the killing. [Fogan] grabbed the customer as he entered the store. With the customer still in his grasp, he attempted to rob the cashier but, instead of providing the money to [Fogan], she pushed [Fogan]'s hand away twice. [Fogan] shot the cashier in the chest, pushed the customer away from him, shot the customer in the chest, and then left the Uni-Mart. [Fogan]'s defense was that he was not the shooter. In such circumstances, a third-degree murder charge is not required. [**See**] **Commonwealth v. Solano**, [ ] 906 A.2d 1180, 1190 (Pa. 2006).

Trial Court Opinion, 5/2/2022, at 11-12.

In **Solano**, Raymond Solano was charged with first-degree murder for killing the victim after shooting him several times at close range. Like Fogan, Solano asserted at his jury trial that he was not the shooter, but the jury nonetheless convicted Solano of first-degree murder. On appeal, Solano, again like Fogan here, argued the court erred by refusing to charge the jury on third-degree murder. Our Supreme Court rejected Solano's claim, holding that the evidence did not warrant a third-degree murder instruction because the evidence "unequivocally established that the victim was intentionally killed after being shot several times at close range." **Solano**, 906 A.2d at 1190. Under these circumstances, the Supreme Court explained, the trial court

- 6 -

properly refused to instruct the jury on third-degree murder because once the jury found Solano was the shooter, it would have to find him guilty of first-degree murder and could not find him guilty of third-degree murder. The **Solano** Court reiterated that "the law is clear that a trial court should not instruct a jury on legal principles which bear no relationship to the evidence presented at trial." **Id.**

Here, we agree with the trial court that it properly refused to charge the jury on third-degree murder under **Solano**. As the trial court found, the evidence at trial established that Customer was shot during the perpetration of a felony such that, if the jury identified Fogan as the shooter, the jury would have to at least convict Fogan of second-degree murder. No relief is due.

Next, Fogan complains the court abused its discretion by allowing a police officer to testify that Fogan spontaneously asked him after his preliminary hearing about Pennsylvania's means of death for death penalty cases. Fogan's argument in support of this claim is underdeveloped and less than clear, and it is arguably waived for those reasons. **See Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived). However, to the extent we glean Fogan's argument from his brief, we find it is also meritless.[1]

_____

[1] To the extent that Fogan attempted to argue an issue different from our analysis, we conclude it is waived.

The challenged testimony arose during the direct examination of Agent Jeremy Brown of the Williamsport Police Department. At sidebar, the Commonwealth advised the court that it planned to ask Agent Brown about a question posed by Fogan following his preliminary arraignment about the method of death for death penalty cases in Pennsylvania. Defense counsel objected on the grounds that the testimony was not allowed under the suppression agreement to which the parties had stipulated. **See** N.T., 9/22/21, at 160.

The court ruled that the testimony was allowed as it was relevant to consciousness of guilt and was not overly prejudicial. **See id.** at 160. Agent Brown proceeded to testify that Fogan had asked him about the means of death for the death penalty in Pennsylvania. The following morning, during cross-examination, Agent Brown testified he was unsure whether the district judge at Fogan's preliminary arraignment had advised Fogan that death was a potential penalty for first-degree murder. The parties entered a stipulation that the district judge would testify that it is his practice to inform defendants facing open counts of homicide, which includes first-degree murder, that the maximum penalty is life or death.

On appeal, Fogan does not argue the trial court erred in concluding Fogan's question about the methods of death was not excluded by the stipulated suppression agreement. He also does not argue the court erred in finding the challenged question was relevant to consciousness of guilt.

Instead, Fogan cites Pa.R.E. 403's general rule that courts may exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice, and seems to suggest the trial court here should have excluded the challenged testimony pursuant to this general rule.

In the first instance, any such argument is waived as it was not the specific basis on which Fogan objected to the challenged testimony at trial. *See Commonwealth v. McGriff*, 160 A.3d 863, 866 (Pa. Super. 2017). In any event, Fogan offers the following list of bald assertions in support of his claim: the testimony provided only "slight" probative value; Agent Brown was not cross-examined until the morning after Agent Brown's testimony on direct examination;[2] Agent Brown denied hearing the district judge tell Fogan that death was a possible penalty for first-degree murder; and the Commonwealth failed to request a consciousness of guilt jury instruction. *See* Appellant's Brief at 19.

This list fails to convince us that the trial court abused its discretion by finding the probative value of Agent Brown's testimony outweighed its prejudicial effect and therefore by ruling that the testimony was admissible.

---

[2] Fogan neglects to mention that defense counsel specifically agreed with the court's suggestion at sidebar to adjourn court for the day after Agent Brown's direct examination and begin cross-examination the following day. *See* N.T., 9/22/2021, at 161. Then, immediately after the Commonwealth completed its direct examination of Agent Brown, the court asked defense counsel if she had any questions she'd like to ask before tomorrow morning, but defense counsel declined. *See id.* at 165.

Fogan concedes the admission of evidence is within the sound discretion of the trial court and that this Court will only reverse a trial court's evidentiary ruling if we find the court abused its discretion. *See Commonwealth v. Clemons,* 200 A.3d 441, 474 (Pa. 2019). This requires us to find that the trial court misapplied the law, or that its judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill will. *See Commonwealth v. Gill*, 651 A.3d 459, 466-467 (Pa. 2019). However, Fogan has not alleged, much less established, that the trial court misapplied the law or that its judgment was manifestly unreasonable or the product of partiality, prejudice, bias or ill will when it ruled the challenged testimony was admissible. As such, Fogan has not met his burden of persuading us that the trial court abused its discretion in admitting Agent Brown's testimony regarding Fogan's question about Pennsylvania's means of death in death penalty cases. *See id.* at 466 (stating that an appellant carries a heavy burden when attempting to show the trial court abused its discretion).

In his third and final claim, Fogan argues the court erred by denying his *nunc pro tunc* post-sentence motion to waive the $7,814.77 in prosecution costs. He asserts, in essence, that the imposition of these costs is unfair because he is serving a life sentence, that he is only capable of earning $2,028 per year, and at that rate, it would take him more than seven years to pay the $7,814.77 in costs and the $7,000 in restitution. He also contends the

costs should be waived so that restitution can be paid. Fogan's claim is without merit.

At the time Fogan filed his motion to waive the prosecution costs, the trial court acknowledged that the Pennsylvania Supreme Court had granted the petition for allowance of appeal in *Commonwealth v. Lopez*, 248 A.3d 589 (Pa. Super. 2021) (*en banc*), where this Court held that a trial court is not required to hold a hearing on a defendant's ability to pay prosecution costs unless the defendant is facing incarceration for a failure to pay those costs. *See Lopez*, 261 A.2d 1031 (Pa. 2021) (*per curiam* order granting allowance of appeal). The trial court, however, also acknowledged that this Court's decision in *Lopez* represented current precedent on the matter, and therefore the trial court had not been required to hold an ability-to-pay hearing before imposing prosecution costs on Fogan as he did not face imprisonment for any failure to pay those costs. The trial court denied Fogan's motion to waive the prosecution costs on that basis. *See* Trial Court Order, 12/21/2021, at 1-2. This Court's decision in *Lopez* was subsequently affirmed by our Supreme Court. *See Lopez*, 280 A.3d 887 (Pa. 2022). *Lopez* clearly supports the trial court's conclusion that it was not required to determine Lopez's ability to pay the prosecution costs before imposing them at sentencing, and we therefore find the trial court did not abuse its discretion when it denied Fogan's motion to waive those costs.

We recognize the trial court, in its Pa.R.A.P. 1925(a) opinion, did address Fogan's arguments supporting his motion to waive the prosecution costs. In doing so, the trial court noted that while an inmate's salary is low, so are his expenses. The trial court also questioned Fogan's sincerity in his assertion that the costs should be waived in order to ensure restitution was paid to the victim's family, rather than as a means to lessen the deductions from his inmate account. However, as even Fogan acknowledges, the trial court denied Fogan's motion to waive costs pursuant to *Lopez*'s directive that the trial court did not need to determine Fogan's ability to pay prosecution costs prior to sentencing him and before he faced imprisonment for a failure to pay those costs. *See* Appellant's Brief at 22 (stating that "the lower court declared that under the law at the time, the Superior Court Opinion in *Lopez*, *supra*, it was not required to determine [Fogan's] ability to pay"). We discern no abuse of discretion in the court's denial of Fogan's motion, and no relief is due.

Judgment of sentence affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/2023